UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIELA FIGUEROA RIVERA, by herself in representation of her minor daughter ALONDRA MILAGROS VEGA FIGUEROA,<br><br>Plaintiff(s),<br><br>HOSPITAL AUXILIO MUTUO, INC., et al.,<br><br>Defendant(s). | Civil No. 10-2178 (DRD) |

**AMENDED ORDER NUNC PRO TUNC**

Pending before the Court are several motions, to wit: (a) *Motion for Appointment of Judicial Defender for the Interest of the Minor* filed by plaintiffs, *see* Docket No. 127; (b) *Motion Requesting Order Directing Clerk of Court Release Funds Pursuant to Court Order (Docket No. 126)* filed by the Florida Agency for Health Care Administration (hereinafter "FAHCA"), which has appeared before this Court without submitting to the jurisdiction of the Court, *see* Docket No. 134; (c) *Amended Petition for Distribution of Settlement Funds and for Order Requiring Establishment of Special Needs Trust* filed by plaintiffs, *see* Docket No. 131; and (d) *Motion for Order on Amended Petition for Distribution of Settlement Funds and for Order Requiring Establishment of Special Needs Trust, or Alternatively, for Hearing on the Amended Petition* filed by plaintiffs, *see* Docket No. 142. For the reasons set forth below, the *Amended Petition for Distribution of Settlement Funds and for Order Requiring Establishment of Special Needs Trust*, and *Motion for Order on Amended Petition for Distribution of Settlement Funds and for Order Requiring Establishment of Special Needs Trust, or Alternatively, for Hearing on the Amended Petition*, Docket entries No. 131 and 142 are denied.

After a thorough review of the Irrevocable Declaration of Trust created under 42 U.S.C. § 1396(d)(4)(A), by plaintiffs' counsel Messieurs Rafael E. García Rodón and Floyd Faglie, on behalf of Mariela Figueroa Rivera, by herself and in representation of her minor daughter, Alondra M. Vega Figueroa,[1] known as The Alondra M. Vega Figueroa Special Needs Trust (hereinafter the "Trust"), the Court has come to a decision against the establishment of the proposed Trust.

Although the Court will not analyze each article and provisions of the Trust, some of them are worth citing, such as, Articles V (Spendthrift Provisions); X (Powers and Duties of Trustee); XI (Trustee and Trust Protector Provisions), and XII (General Provisions). The Court includes below some of the most questionable provisions of the Trust, which the Court finds are not in the best interest of the brain affected minor, amongst many others:

> 11.8: <u>Trustee Compensation</u>. The Trustee shall be entitled to receive annual compensation for its services hereunder in accordance with its published fee schedules in effect when the services are performed. For any services performed by the Trustee in connection with the Beneficiary's estate, which services are normally performed by the personal representative, the Trustee shall be entitled to such additional compensation as may be fair and reasonable under the circumstances, not to exceed seventy-five percent (75%) of the additional compensation to which it would be entitled as Executor if the assets of this Trust were to be superimposed upon the testamentary estate of the Beneficiary.[2]

---

[1] Minor Alondra M. Vega Figueroa was born on January 16, 2002 at Hospital Auxilio Mutuo. *See* Docket No. 1, page 3, ¶ 3.1. She was discharged from Hospital Auxilio Mutuo on March 8, 2003 [sic] suffering permanent brain damage, and with a final diagnosis of Hypoxic Encephalopathy. *See* Docket No. 1, page 5, ¶¶ 3.28, 3.29, 3.30.

[2] The executor of a will has a task which is considerably more complex than a person who receives the settlement amount and must merely invest said amount by using the services of an economic investment expert as to the disabled minor/adult, other expenses of the disabled minor/adult, and then paying the medical expenses, and other reiterated expenses. Hence, the requested fees, as to the trustee compensation, seems, first unknown to the Judge, and second less burdensome and complex than the work of an executor.

11.9: <u>Indemnification of Trustee</u>.  The Trustee and each of its Co-trustees, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, are hereby indemnified by the Trust and the Trust property against all claims, liabilities, fines, or penalties, and against all costs and expenses, including attorney's fees and disbursements and the cost of reasonable settlements, imposed upon, asserted against or reasonably incurred thereby in connection with or arising out of any claim, demand, action, suit, or proceeding in which he, she, or it may be involved by reason of being or having been a Trustee or affiliated with a Trustee as set forth above, whether or not he, she, or it shall have continued to serve as such at the time of incurring such claims, liabilities, fines, penalties, costs, or expenses or at the time of being subjected to the same.  However, the Trustee and each of its Co-trustees, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, shall not be indemnified with respect to matters as to which he, she, or it shall be finally determined to have been guilty of willful misconduct in the performance of any duty by a Court of competent jurisdiction.  This right of indemnification shall not be exclusive of, or prejudicial to, other rights to which the Trustee and each of its Co-trustees, agents and employees, including the heirs, successors, assigns, and personal representatives of its agents, may be entitled as a matter of law or otherwise.  Nothing in this paragraph 11.9 shall be construed so as to relieve any corporate Trustee from the prudent exercise of its fiduciary duty according to law and/or normally accepted standards and principles relating to fiduciaries.

12.2: <u>Trust to Be Free From Court Supervision</u>.  The Trust established under this Agreement shall be administered free from the active supervision of any Court.  However, any proceedings to seek judicial instructions, or a judicial determination may be initiated by the Trustee, or any Co-Trustee that is specifically named as such by the Trustee, in any Court having jurisdiction of matters relating to the construction and administration of trusts.  The Trustee may seek such a judicial determination for any purpose specifically authorized in this Agreement in addition to any purpose deemed appropriate and/or necessary by the Trustee in the Trustee's sole and absolute discretion.  Any Court so petitioned shall not thereby acquire any jurisdiction over the Trust except to the extent necessary to rule in the specific

matter brought before the Court by the petitioning party.[3]

12.4: <u>Governing Law and Venue</u>. This Trust shall be governed exclusively by, and interpreted exclusively in accordance with, the laws of the United State and the State of Florida, and venue for any proceeding hereunder shall be in the County in which the Trustee maintains its principal office. Any Trustee hereunder may change the situs of the Trust to a jurisdiction other than Florida upon notice to the Beneficiary, and the Trust will thenceforth be governed by the laws of that jurisdiction. Notwithstanding the provisions hereunder regarding venue, the Trustee shall also have additional standing to petition a Court within any jurisdiction where the Beneficiary or the Beneficiary's legal representative may come to reside.[4]

This is not the first time the Court has been presented with a proposal for a special needs trust, which the Court respectfully has ruled against the conditions of the proposed Trust after finding that some terms and conditions of the proposed Trust are not in the best interest of the disabled minor/adult.

In the instant case, the undersigned Judge wishes to remain protecting the disabled minor/adult's best interests by retaining federal jurisdiction, in order to control and protect the benefits of the disabled minor/adult, as empowered by both the Constitution of the United States of America, Article III § 2, cl.1; Article VI § 2; the Constitution of the Commonwealth of Puerto Rico, and the Children's Bill of Rights, 1 L.P.R.A. § 412, amongst others. The Court, however, has no problem considering a reasonable proposed special needs trust, but not under the loose or non-existent supervision urged by counsel for plaintiffs, Mr. Floyd Flagie.

The Court is cognizant that it is a discretional matter to approve or decline to approve the

---

[3] The Court considers its parents patriae over a disabled minor/adult to be a serious responsibility. We cannot delegate some or all of these duties to a person or persons who do not respond to anybody.

[4] The Court cannot accept a transfer of the disabled minor/adult and/or a change of venue of the applicable law, subject to the approval of merely a beneficiary who is mentally incapacitated. According to the provisions of the proposed Trust, the transfer of change of venue could potentially be anywhere in the world!!

special needs trust.  Secondly, the Court will not approve a trust or any other financial proposal that is not sufficiently federally secured.  Thirdly, the undersigned is not convinced that the disabled minor/adult will be deprived of Medicaid benefits, or any other benefits entitled to under federal law, if the Court does not authorize the Trust, as stated by counsel Flagie.  The "chamber of horrors" described by counsel for plaintiff is simply exaggerated.  Indeed, the contrary is true.  The Court finds that plaintiff disabled minor/adult will not be deprived of Medicaid benefits or any other benefits that she may be entitled to under federal law on account that plaintiff disabled minor/adult has been awarded tort damages on a settlement agreement resulting from an action filed under federal diversity jurisdiction malpractice suit,[5] which specifically provides for payment of medical care paid by Medicaid.  In the instant case, the amount of $888,987.69 was specifically reserved in the *Settlement Agreement*, for the payment of the Medicaid lien, which the Court notes was the same amount certified by the ACS Recovery Services through a Notice of Lien to Attorney dated January 15, 2003, *see* Docket No. 53-1, and confirmed by attorney Adam Stallard representing the State of Florida Agency for Health Care Administration at the hearing held on March 27, 2014, Docket No. 108.   The Court notes that the Medicaid lien amount was calculated by ACS "in accordance with Florida Statutes § 409.910."  *See* Docket No. 53-1.

In any event, the Court finds that the plaintiff disabled minor has complied with the Medicaid Act by providing for reimbursement to Medicaid the lien amount determined by "ACS Recovery Services, the authorized contract representative for the Florida Agency for Health Care Administration, Medicaid Third Party Liability Program."  *See* Docket No. 53-1.  *See also WOS v.*

---

[5] There is no jury privilege in Puerto Rico under civil state law.  Able plaintiffs' counsel García Rodón, originally chose the federal court in order to obtain a reasonable settlement in a short period of time.

*E.M.A. Ex Rel. Johnson*, ___ U.S. ___, 133 S.Ct. 1391, 185 L.Ed.2d 471 (2013).

In *WOS*, the Supreme Court held that the State is impaired from collecting amounts not "designated as payments for medical care" from the beneficiary's tort judgment or settlement, as the Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1) preempts the state law. *WOS* is a case challenging the state of North Carolina attachment on the Medicaid beneficiary.

> A federal statute prohibits States from attaching a lien on the property of a Medicaid beneficiary to recover benefits paid by the State on the beneficiary's behalf. 42 U.S.C. § 1396p(a)(1). The anti-lien provision pre-empts a State's effort to take any portion of a Medicaid beneficiary's tort judgment or settlement not "designated as payments for medical care." *Arkansas Dept. of Health and Human Servs. v. Ahlborn*, 547 U.S. 268, 284, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). North carolina has enacted a statute requiring that up to one-third of any damages recovered by a beneficiary for a tortious injury be paid to the State to reimburse it for payments it made for medical treatment on account of the injury. *See* N.C. Gen.Stat. Ann. § 108A-57 (Lexis 2011); *Andrews v. Hayggod*, 362 N.C. 599, 604-605, 669 S.E.2d 310, 314 (2008). The question presented is whether the North Carolina statute is compatible with the federal anti-lien provision.
>
> . . .
>
> In some circumstances, however, the statute would permit the State to take a portion of a Medicaid beneficiary's tort judgment or settlement not "designated as payments for medical care." *Ahlborn*, 547 U.S. at 284. The Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1), bars that result.

133 S.Ct. at 1304-1395,1402.

In the instant case, the plaintiff disabled minor currently resides in the State of Florida. Hence, ACS Recovery Services has applied the F.S.A. § 409.910: Responsibility for payments of Medicaid-eligible persons when other parties are liable. In the State of Florida, contrary to the State of North Carolina, the law provides that, "(11)(d)[i]n the event of judgment, award, or settlement

in a claim or action against a third party, the court shall order the segregation of an amount sufficient to repay the agency's expenditures for medical assistance, plus any other amounts permitted under this section, and shall order such amounts paid directly to the agency." But under the § 409.910(4), the law provides that "after the agency has provided medical assistance under the Medicaid program, it shall seek recovery of reimbursement from third-party benefits to the limit of legal liability and for the full amount of third-party benefits to the limit of legal liability and for the full amount of third-party benefits, but not in excess of the amount of medical assistance paid to Medicaid, as to...."

In sum, regardless of the provisions of the applicable law for the State of Florida, the same are preempted by the Medicaid Act, as the Medicaid anti-lien provision, 42 U.S.C. § 1396p(a)(1), bars that result." *See WOS,* \_\_\_ U.S. \_\_\_, 133 S.Ct. at 1402. In the instant case, the parties and the Florida Agency for Health Care Administrator settled the amount of the original Medicaid lien asserted in $888,987.69 to $101,344.63 in full satisfaction of its Medicaid lien. *See Order* of May 29, 2014, Docket No. 126.

Lastly, the Court is cognizant that the *Settlement Agreement* provides for the establishment of a special needs trust on behalf of the plaintiff disabled minor. *See* Docket No. 53-1, ¶ 11 *et seq*. The Court "noted and approved" the *Settlement Agreement* submitted by the parties, followed by the *Judgment* dismissing the instant case. *See* Docket entries No. 53-56. However, the record shows that the special needs trust was filed on July 14, 2014, and subsequently amended on July 23, 2014. *See* Docket entries No. 128, 131. Hence, the fact that the *Settlement Agreement* provides for the transfer of the settlement funds to a special needs trust does not automatically translates into the approval of the proposed special needs trust filed with the Court in July 2014.

The Court is not closed to approve a proposed special needs trust that provides for the court's

supervision and final approval of all the transactions to ensure that the best interests of the plaintiff disabled minor/adult are safeguarded. However, the protection of the disabled minor/adult are first and foremost for the undersigned, and it will not to be partially delegated unless the Court is satisfied as to the prudent investment and use of the settlement funds obtained, discounting the lawyers' fees, and the investment of the settlement account is properly and reasonably secure.[6]

In the event, plaintiff disabled minor/adult has a medical need or any other urgent necessity, plaintiff Mariela Figueroa Rivera or her counsel shall move the Court to request any urgent remedy on behalf of her minor daughter without further *ado*, and shall contact the law clerk assigned to this case in order for the Court to proceed in an expedited fashion.

## Conclusion

In view of the foregoing, the Court rules as follows:

1. *Motion for Appointment of Judicial Defender for the Interest of the Minor*, Docket No. 127: Noted and Moot at this stage of the proceedings.

2. *Motion Requesting Order Directing Clerk of Court to Release Funds Pursuant to Court Order (Docket No. 126)*, Docket No. 134: Granted, the Clerk will issue a check payable to the order of Agency for Health Care Administration in the amount of $101,344.63 forthwith. The Clerk will mail the check to the Agency for Health Care Administration, Headquarters, 2727 Mahan Drive, Mail Stop # 19, Tallahassee, Florida 32308.

---

[6] The Court is not opposed to the monies being transfer to the parents or their heirs should the plaintiff disabled minor/adult decease. The Court further pellucidly states that the ruling is only as to the non-approval of the dispositions of the proposed special needs trust submitted to the Court.

3. *Amended Petition for Distribution of Settlement Funds and for Order Requiring Establishment of Special Needs Trust*, Docket No. 131:

- Petition for Disbursement is MOOT, *see Order* of December 16, 2014, Docket No. 141.

- Request to issue a check payable to the order of Alondra M. Vega Figueroa Special Needs Trust is DENIED, for the reasons stated above.

- The Court will retain jurisdiction to enforce the terms and conditions of the settlement agreement until the Court otherwise rules.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 16th day of March, 2015.

s/Daniel R. Domínguez
DANIEL R. DOMINGUEZ
United States District Judge